UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:00CV02007 (EBB) |
| | ) | |
| ONE 1999 CHEVROLET TAHOE, V.I.N. | ) | |
| # 3GNEK18R7XG150578, WITH ALL | ) | |
| APPURTANCES AND ATTACHMENTS | ) | |
| THEREON, AND ONE 1994 HARLEY | ) | |
| DAVIDSON MOTORCYCLE, V.I.N. | ) | |
| # 1HD1GRL15RY305363, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## RECEIVER-CLAIMANTS' MOTION FOR SUMMARY JUDGMENT

### Introduction

GEORGE DALE, Commissioner of Insurance for the State of Mississippi, in his official

capacity as Receiver of Franklin Protective Life Insurance Company ("FPL"), Family Guaranty

Life Insurance Company ("FGL"), and First National Life Insurance Company of America

("FNL"), PAULA A. FLOWERS, Commissioner of Commerce and Insurance for the State of

Tennessee, in her official capacity as Receiver of Franklin American Life Insurance Company

("FAL"), DARYL ENGLAND, Acting Insurance Commissioner for the State of Oklahoma, in

his official capacity as Assistant Receiver of Farmers and Ranchers Life Insurance Company in

Liquidation ("F&RL"), MIKE PICKENS, Insurance Commissioner for the State of Arkansas, in

his official capacity as Receiver of Old Southwest Life Insurance Company ("OSL"), and

DOUGLAS M. OMMEN, Acting Director of the Department of Insurance for the State of

Missouri, in his official capacity as Receiver of International Financial Services Life Insurance

Company ("IFS") (collectively, the "Receiver-Claimants") move the Court to enter summary

KC-1252807-1                                    1

judgment in their favor pursuant to F.R.C.P. 56 on their counterclaims and affirmative defenses and deny the requested civil forfeiture in this proceeding. The Receiver-Claimants request title and possession of the assets that are the Defendant Properties in this forfeiture action.

This action arises from the activities of a notorious criminal enterprise designed to acquire and loot insurance companies. The scheme involved a complex system of money laundering through domestic and foreign bank accounts, masterminded by Martin Frankel ("Frankel"). In total, Frankel stole over $200 million in assets from seven Insurance Companies domiciled in five different states.[1] Commissioners and Directors of Insurance in the five domiciliary states of the seven Insurance Companies placed each of the companies in receivership as a result of the substantial losses each company suffered. The Receiver-Claimants in this case are the five State Commissioners and Directors of Insurance, acting as court-appointed Receivers of the seven Insurance Companies reduced to insolvency as a result of the scheme directed by Frankel. The Receiver-Claimants seek return of the Defendant Properties to the state court liquidation estates for distribution to policyholders and other claimants in the liquidation proceedings in accordance with the uniform state insolvency statutes.

The United States brought numerous criminal charges against Frankel and his associates for their roles in the scheme. On May 10, 2002, Frankel entered into a plea agreement with the United States whereby he pled guilty to multiple counts of wire fraud, securities fraud, RICO violations, and forfeiture. In his Stipulation of Offense Conduct, Frankel identified the transfers of the Insurance Companies' assets as part of the wire fraud. Frankel's statements comprise the

---

[1] The "Insurance Companies" are First National Life Insurance Company of America, Franklin American Life Insurance Company, Family Guaranty Life Insurance Company, Franklin Protective Life Insurance Company, Farmers and Ranchers Life Insurance Company (now Farmers and Ranchers Life Insurance Company in Liquidation), Old Southwest Life Insurance Company, and International Financial Services Life Insurance Company.

factual cornerstone of the United States' claims that the Defendant Properties are subject to forfeiture.

Both the United States and the Receiver-Claimants have traced the Defendant Properties to funds wire transferred from the bank accounts of the Insurance Companies to offshore accounts in Switzerland, the same accounts subsequently identified and seized by the United States in connection with the Frankel criminal investigation. Upon discovering the criminal enterprise, the United States instituted this civil forfeiture lawsuit and seized the Defendant Properties under 18 U.S.C. § 981 as proceeds of wire fraud. It is uncontroverted that the Defendant Properties in this action constitute assets acquired with funds stolen from the Insurance Companies by wire fraud.

The Insurance Companies are innocent owners; therefore, the United States is precluded from forfeiting the Defendant Properties. The Receiver-Claimants satisfy each of the alternative tests for determining innocent ownership under 18 U.S.C. § 983(d)(2)(A)(i) and (ii). The Insurance Companies did not know of or consent to the criminal conduct giving rise to the forfeiture. Moreover, upon learning of the looting, the Insurance Companies did all that reasonably could be expected to prevent further criminal acts by Frankel and his associates.

Alternatively, as set forth in the Receiver-Claimants' Answers and Counterclaims, the funds were impressed with a constructive trust for the benefit of the Insurance Companies when they were stolen. A constructive trust constitutes a sufficient ownership interest to establish that the Receiver-Claimants were lawful owners of the Defendant Properties at the time the United States initiated its forfeiture proceeding.

In this proceeding, the Court entered default judgments on the claims of David Rosse. No claimants remain other than the Receiver-Claimants. Frankel's admissions that he looted the

Insurance Companies' assets and his agreement not to contest the forfeitures pave the way for the prompt return of the Defendant Properties to the Receiver-Claimants. That, however, has not yet occurred. Now that Frankel has been sentenced and the other claimants have defaulted, it is time for the Defendant Properties to be returned to the Insurance Companies' liquidation estates for distribution to policyholders and other claimants pursuant to the State's statutory schemes.[2] For these reasons, as provided in 18 U.S.C. § 983(d), the Defendant Properties should not be forfeited but instead be returned to Receiver-Claimants, as requested in the counterclaims filed herein.

## SUMMARY JUDGMENT STANDARD

Based upon the Verified Complaint of Forfeiture, the Receiver-Claimants' Answers and Affirmative Defenses, and Frankel's Plea Agreement and the accompanying Stipulation of Offense Conduct, summary judgment should be entered in favor of the Receiver-Claimants.

On a motion for summary judgment, the moving party must show that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Abramowitz v. Romano, 303 F. Supp. 2d 79, 82 (D. Conn. 2004) (citing Fed. R. Civ. P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992)).

If the moving party carries its burden, the party opposing summary judgment cannot rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Szekeres v. Schaeffer, 304 F. Supp. 2d 296, 304 (D. Conn. 2004). To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there

---

[2] At the time of Frankel's sentencing, the Court entered a Restitution Order against him in favor of the seven Insurance Companies in the amount of $204,164,215.79.

is some metaphysical doubt as to the material facts." Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. (quoting Anderson, 477 U.S. at 251-52).

The United States' allegations and admissions establish the factual basis for the Receiver-Claimants' innocent owner defense and conclusively demonstrate that the Insurance Companies now represented by the Receiver-Claimants were victims of Frankel's crimes. There are no genuine issues of material fact whether the Defendant Properties are traceable to funds stolen from the Insurance Companies, whether the Receiver-Claimants, acting on behalf of the Insurance Companies' liquidation estates, are innocent owners of the Defendant Properties, and whether the Defendant Properties should be returned to the Receiver-Claimants. See, e.g., U.S. v. Grass, 274 F. Supp. 2d 648, 656-57 (M.D. Pa. 2003) (holding that the government is bound by the allegations contained within an indictment and Bill of Particulars which establish the existence of an innocent owner defense). Summary judgment is the appropriate method for this Court to decide that the Receiver-Claimants satisfy the statutory requirements of an innocent owner of the Defendant Properties under 18 U.S.C. § 983(d) and are, therefore, entitled to have title to and possession of the Defendant Properties transferred to the liquidation estates. See United States v. 2001 Honda Accord EX VIN # 1HGCG22561A025829, 245 F. Supp. 2d 602, 612 (M.D. Pa. 2003).

## ARGUMENT

As part of its criminal prosecution of the enterprise operated by and the persons associated with Frankel, the government seized property purchased with assets stolen from the Insurance Companies. The Receiver-Claimants represent the victims and rightful owners of the Defendant Properties as innocent owners under 18 U.S.C. § 983(d), which protects owners

against forfeiture of their property.  As innocent owners, the Receiver-Claimants now seek summary judgment on their counterclaims for title and possession of the Defendant Properties. Title 18, § 983 of the U.S. Code provides the manner in which property may be forfeited by the federal government.  Section 983 also provides the manner in which innocent owners, such as the Receiver-Claimants, may prevent forfeiture and have the subject property returned.  Since the interpretation and application of a statute is a matter of law, the determination of whether the Receiver-Claimants are innocent owners is appropriate for summary judgment.  U.S. v. Awadallah, 349 F. 3d 42, 51 (2d Cir. 2003).

18 U.S.C. § 983(d) provides:

(1)  An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute.  The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.

(2)(A)  With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term "innocent owner" means an owner who –

(i)    Did not know of the conduct giving rise to the forfeiture; or

(ii)    Upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.

(2)(B)(i)  For the purposes of this paragraph, ways in which a person may show that such person did all that reasonably could be expected may include demonstrating that such person, to the extent permitted by law –

(i)  Gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; and

(ii)  In a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property.

Thus, if a person (1) is an "owner" of the property sought to be forfeited,[3] and (2) did not know of the conduct giving rise to the forfeiture or, alternatively, did all that could be reasonably expected to terminate further use of the property upon learning of the criminal activity, that person's property cannot be forfeited. For example, a mother who purchased a vehicle, insured it, had title issued in her name, and required her son to ask permission before he could use it was an innocent owner of the forfeited vehicle despite her son's use of the vehicle in a drug deal. 2001 Honda Accord EX, 245 F. Supp. 2d at 612.

A.    **As Duly Appointed Statutory Receivers of The Insurance Companies, the Receiver-Claimants Have an Ownership Interest in the Defendant Properties.**

In order to establish the "innocent owner defense," the Receiver-Claimants must have an ownership interest in the Defendant Properties. "In the context of forfeiture, 'the term "owner" should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." United States v. Funds Held in the Name or for the Benefit of Wetterer, 210 F.3d 96, 109-10 (2d Cir. 2000) (quoting United States v. Parcel of Real Property known as 6109 Grubb Road, 886 F.2d 618, 625 n.4 (3d Cir. 1989)).

The Receiver-Claimants, by operation of law, have the statutory right and duty to pursue and recover the assets of the Insurance Companies, such as the Defendant Properties at issue here. Recovered assets are administered by the liquidation estates and distributed in accordance with priorities established by State laws governing the insolvency of insurance companies. The

---

[3]  18 U.S.C. § 983(d)(6) defines an "owner" as -

        (A) a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of ownership interest; and
        (B) does not include –

                (i) a person with only a general unsecured interest in, or claim against, the property or estate of another;
                (ii) a bailee unless the bailor is identified and the bailee shows a colorable, legitimate interest in the property seized; or
                (iii) a nominee who exercises no dominion or control over the property.

Receiver-Claimants, as successors-in-interest and statutory receivers, are empowered to pursue

the Insurance Companies' claims against the Defendant Properties.[4]  Thus, having stepped into

the shoes of the Insurance Companies for purposes of ownership and retrieval of their assets,

Receiver-Claimants have the right to assert the ownership interests of the Insurance Companies

in and to recover the Defendant Properties for distribution through the liquidation estates.

> **B.     The Receiver-Claimants Are Innocent Owners of the Defendant Properties Because the Insurance Companies Had No knowledge of the Criminal Conduct That Resulted In This Forfeiture.**

Application of the plain language of 18 U.S.C. § 983(d) to the uncontroverted facts

shows that the Receiver-Claimants are owners of the Defendant Properties.  There is no dispute

between Receiver-Claimants and the United States – the only parties to this action – that Rosse

acquired the Defendant Properties with funds from the Bloomfield Account.   Frankel has

admitted that he used the Bloomfield Account to launder funds stolen from the Insurance

Companies and to fund his criminal operations.   The United States' own investigators have

---

[4] *See* Miss. Code Ann. §83-24-41(1)(h); Final Order of Liquidation and Finding of Insolvency for FNL (Ex. 3) at 5 (ordering Dale to exercise the powers, duties, and responsibilities of a liquidator pursuant to Miss. Code Ann. §83-24-1 *et seq.*); National Casualty Co. v. Hallam, 138 So. 572, 574 (Miss. 1932) (receiver of insurance company had right to collect on fidelity bonds issued on company's officers); Ark. Code. Ann. §24-68-111(a) (liquidator takes possession of the property of the insurer and deals with the property and business in his own name or in the name of the insurer, as the court may direct); Permanent Injunction and Order Appointing Permanent Receiver (Ex. 7) at 2 (authorizing and directing Pickens to take possession of all property and assets of OSL, and granting him power to preserve, protect and recover any assets or property of OSL, including claims or causes of action belonging to OSL); Johnson v. House, 198 S.W. 876, 876 (Ark. 1917) (receiver of insolvent insurance company is authorized to enforce rights of company); R.S.Mo. 375. 1176 (title of all property, contracts and rights of action of IFSLIC vested with liquidator); Final Order, Judgment and Decree to Liquidate the Business of a Domestic Insurer (Ex. 8) at 2 (ordering liquidator to take immediate possession of the assets of IFSLIC pursuant to 375.1176); Viacom v. Transit Casualty Co., 2004 WL 414157 at *1 (Mo. Ct. App.) (section 375.1176 gives the liquidators control of the insurance company in order to liquidate it); 36 O.S. § 1911 (Insurance commissioner shall take possession of all property and deal with insurers' property and business in his own name); Order Granting Receiver's Application for Order Declaring Insolvency (Ex. 5) at 6 (declaring company insolvent and directing Receiver to liquidate the company); Crawford v. Guardian Life Ins. Co., 954 P.2d 1235, 1244 (Ok. 1998) (once court declares a company's insolvency commissioner vested with title to all property, contracts and rights of action formerly controlled by the insurer); Tenn. Code Ann. § 50-9-307 (liquidator vested with all title to property, contracts and rights of action); Consent Final Order of Liquidation; Finding of Insolvency; and Permanent Injunction (Ex. 6) at 6 (ordering Sizemore to exercise all powers available under the Liquidation Order and Tennessee law); and United Physicians Ins. Risk Retention Group v. United American Bank of Memphis, 1996 WL 47926 at *3 (liquidator has broad powers to liquidate business and takes title to all the company's real and personal property).

concluded that all funds deposited into the Bloomfield Account were funds stolen by Frankel from the Insurance Companies and that Frankel had no other source of income during this time period.

Since the Defendant Properties are unquestionably derived from the proceeds of funds stolen from the Insurance Companies, the Receiver-Claimants are innocent owners under 18 U.S.C. § 983(d), so long as either (1) they had no knowledge of the criminal conduct that resulted in the forfeiture of the Defendant Properties or, (2) once the Receiver-Claimants learned of the criminal conduct, they took all reasonable steps to terminate the criminal use of the Defendant Properties.

The Government has previously stipulated that the Insurance Companies did not have knowledge of the criminal conduct giving rise to the forfeiture. Therefore, the Defendant Properties should not be forfeited but should be returned to the Receiver-Claimants for distribution through the liquidation estates.

Alternatively, the Receiver-Claimants are innocent owners because upon learning that the Insurance Companies' assets had not been invested at LNS they immediately and fully cooperated with law enforcement authorities and initiated regulatory actions to seize control of the Insurance Companies and their assets. The Commissioners and Directors of Insurance who now act as Receivers for all the Insurance Companies provided notice to appropriate law enforcement agencies of their suspicions immediately upon confirmation that assets supposedly held by LNS were missing. Moreover, the Receivers-Claimants immediately initiated actions to freeze the Insurance Companies' bank accounts to prevent further stealing by Frankel, and they restricted access to the Insurance Companies' offices and other assets. The Receiver-Claimants'

prompt actions terminated Frankel's ability to exert control over the Insurance Companies' remaining assets.

After the Insurance Companies were placed in receivership, the Receiver-Claimants thoroughly and diligently addressed all inquiries, requests, and concerns of the federal authorities. The receivership staffs and their counsel compiled and provided evidence to the government to support the criminal charges of mail fraud and money laundering filed against Frankel and his associates, including information about the criminal activity involving the Defendant Properties. The receiverships' staff and counsel took all necessary steps to preserve and secure the documents located at the Franklin, Tennessee offices. The Receiver-Claimants fully and promptly responded to numerous requests from federal authorities for documents. The receivership staffs and counsel have remained on standby throughout the Frankel-related criminal matters to provide testimony or other information at the request of the federal authorities. The Receiver-Claimants have consulted and cooperated with law enforcement to the fullest extent possible and have done all that could reasonably be expected of them. Accordingly, the Receiver-Claimants' conduct satisfies the second test for establishing innocent ownership under 18 U.S.C. § 983(d).

Since the Receiver-Claimants are innocent owners, the Defendant Properties should not be forfeited to the Government but returned to the Receiver-Claimants' liquidation estates.

### C.    The Receiver-Claimants Are Also Innocent Owners as The Defendant Properties Are Subject To a Constructive Trust In Favor of the Receiver-Claimants.

An "owner" under the innocent owner provisions of the forfeiture statutes must have an "ownership interest" in the Defendant Properties. 18 U.S.C. §983(d)(6). As a matter of law, the Receiver-Claimants have such an ownership interest and are innocent owners under the statute.

The United States has recognized that the Receiver-Claimants are owners of the Defendant Properties. In addition to their role as Liquidators, their interest is established through the constructive trust that exists as to Defendant Properties. In a forfeiture action, "[o]wnership interests are defined by state law." U.S. v. One Lincoln Navigator 1998, 328 F.3d 1011, 1015 (8th Cir. 2003). Under the law of New York, applicable here,[5] the requisite ownership interest also arises due to the existence of a constructive trust. When Frankel (through LNS) stole the funds from the Insurance Companies, the stolen funds were impressed with a constructive trust for the benefit of the Insurance Companies. See SCOTT ON TRUSTS § 462.4 (4th Ed. 1989). A claimant has a sufficient "ownership interest" in property to qualify as an innocent owner under the forfeiture statutes when property is subject to a constructive trust for the claimant's benefit. See, e.g., United States v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1160 (2d Cir. 1994); United States v. Schwimmer, 968 F.2d 1570, 1582 (2d Cir. 1992); United States v. Marx, 844 F.2d 1303 (7th Cir. 1988).

As admitted by the United States, the Insurance Companies' assets are traceable to the Defendant Properties at issue in this case. The Receiver-Claimants' constructive trust also extends to all property acquired by Frankel and his associates with the stolen funds. SCOTT ON TRUSTS § 291.4.

Under New York law, the elements of a constructive trust are "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment." Counihan v. Allstate Ins. Co., 194 F.3d 357, 361-62 (2d Cir. 1999) (quoting Sharp v. Kosmalski,

---

[5] The Defendant Properties were seized in the State of New York. "The 'general rule' under both state and federal choice of law rules is that the law of the situs of the property and, therefore, the trust, governs [the] determination of whether property... is subject to a constructive trust." S.E.C. v. Credit Bancorp, Ltd., 138 F. Supp. 2d 512, 531 (S.D.N.Y. 2001), rev'd on other grounds, 297 F. 3d 127 (2d Cir. 2001). New York law applies to the Claimants' constructive trust claims because Frankel gained control over the Insurance Companies' funds after the funds were transferred to accounts in New York.

40 N.Y.2d 119, 121, 351 N.E.2d 721 (1976)). "Applying New York law, we have observed that, '[a]lthough these factors provide important guidepost, the constructive trust doctrine is equitable in nature and should not be rigidly limited.'" Id. at 362, citing, inter alia, Lines v. Bank of Am. Nat'l Trust & Sav. Ass'n, 743 F. Supp. 176, 180 (S.D.N.Y. 1990) (the elements are not talismanic and courts have imposed a constructive trust in the absence of some of these elements). "What the New York courts do insist upon is a showing that property is held under circumstances that render unconscionable and inequitable the continued holding of the property and that the remedy is essential to prevent unjust enrichment." Id.

LNS impliedly promised that, when the Insurance Companies' funds were transferred to or moved by LNS, LNS would return the money safely to the Companies. See Counihan, 194 F.3d at 362 (implied promise is sufficient). There is simply no dispute that the Defendant Properties were obtained with funds converted from the Receiver-Claimants "under circumstances that render unconscionable and inequitable the continued holding of the property and that the remedy [of a constructive trust] is essential to prevent unjust enrichment." Lines, 743 F. Supp. at 180.

Imposing upon the Defendant Properties a constructive trust in favor of the Receiver-Claimants serves the interests of justice expressed in the forfeiture statutes. Thus, as a matter of equity, the Insurance Companies are "innocent owners" of the Defendant Properties under 18 U.S.C. § 983(d)(6).

Since the Receiver-Claimants have an ownership interest in the Defendant Properties both legally and equitably, the Defendant Properties should not be forfeited. The Defendant Properties should be returned to the Receiver-Claimants for distribution to the Insurance Companies' policyholders and other claimants through the liquidation estates.

## CONCLUSION

It is unjust and inequitable that the Insurance Companies represented by the Receiver-Claimants, having been defrauded of millions of dollars, should also suffer forfeiture of Defendant Properties acquired with their funds.    There is no dispute that the Defendant Properties were purchased with funds traceable to the Bloomfield Account that was funded with money stolen from the Insurance Companies.  Forfeiture of the Defendant Properties will unjustly enrich the United States at the expense of the policyholders and other claimants who have lost so much at the hands of Frankel.  Punishing the Receiver-Claimants by forfeiting the Defendant Properties because of the criminal actions of Frankel serves no deterrent purpose and only shifts additional losses to the innocent policyholders and claimants of the insolvent Insurance Companies.  The forfeiture statutes are not designed or intended to punish the innocent victims of the crimes.

The United States' own facts are uncontroverted in this and the other forfeiture proceedings and establish that Receiver-Claimants are innocent owners of the Defendant Properties under 18 U.S.C. § 983(d).  The Defendant Properties thus are not subject to forfeiture to the United States.  The Court should enter summary judgment in favor of Receiver-Claimants on their Answers and Counterclaims for title and possession of the Defendant Properties and grant title and possession of the Defendant Properties to the Receiver-Claimants' liquidation estates.

Respectfully submitted, this 31st day of January, 2005.

/s/ Douglas S. Skalka
Douglas S. Skalka            Fed. Bar No. 00616
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510-2026
Telephone: (203) 821-2000
Facsimile: (203) 821-2009

Of Counsel

Alan F. Curley
C. Philip Curley
Cynthia H. Hyndman
ROBINSON CURLEY & CLAYTON, P.C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
Ph (312) 663-3100

and

Douglas J. Schmidt            MO # 34266
Terrance M. Summers          MO # 38319
Patrick A. McInerney          MO # 37638
Blackwell Sanders Peper Martin LLP
4801 Main, Suite 1000
Kansas City, Missouri 64112
Tel (816) 983-8000
Fax (816) 983-8080
Counsel for
DOUGLAS M. OMMEN, Acting Director of the
Department of Insurance for the State of Missouri,
in his official capacity as Receiver of
INTERNATIONAL FINANCIAL SERVICES
LIFE INSURANCE COMPANY

and

Charles G. Copeland (MS Bar #6516)
Rebecca Blunden (MS Bar #99611)
COPELAND, COOK, TAYLOR & BUSH, P.A.
P.O. Box 6020
Ridgeland, Mississippi 39158
Ph (601) 856-7200
Fx (601) 856-7626
Counsel for
GEORGE DALE, Commissioner of Insurance for
the State of Mississippi, in his official capacity as
Receiver of FRANKLIN PROTECTIVE LIFE
INSURANCE COMPANY, FAMILY
GUARANTY LIFE INSURANCE COMPANY,
and FIRST NATIONAL LIFE INSURANCE
COMPANY OF AMERICA

and

Andrew B. Campbell (TN 14258, CT Fed. 21433)
Graham Matherne, Esq.
WYATT, TARRANT & COMBS, LLP
2525 West End Avenue, Suite 1500
Nashville, Tennessee  37203-1423
Ph (615) 244-0020
Fx (615) 251-6661
Counsel for
PAULA A. FLOWERS, Commissioner of
Commerce and Insurance for the State of
Tennessee, in her official capacity as Receiver of
FRANKLIN AMERICAN LIFE INSURANCE
COMPANY

and

Susan B. Loving, Esq.
LESTER, LOVING AND DAVIES
1701 South Kelly
Edmond, Oklahoma 73013
Ph (405) 844-9900
Fx (405) 844-9958
Counsel for
DARYL ENGLAND, Acting Insurance
Commissioner for the State of Oklahoma, in his
official capacity as Receiver of FARMERS AND
RANCHERS LIFE INSURANCE COMPANY

and

Steve A. Uhrynowycz, Esq.
Arkansas Insurance Department
Liquidation Division
1200 West Third Street, Room 340
Little Rock, Arkansas 72201-1904
Ph (501) 371-2776
Fx (501) 374-0101
Counsel for MIKE PICKENS, Insurance
Commissioner for the State of Arkansas, in his
official capacity as Receiver of OLD
SOUTHWEST LIFE INSURANCE COMPANY

Attorneys for Receiver-Claimants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was delivered on the 31st day of January, 2005, via United States mail, first-class postage prepaid, to:

John A. Danaher, III
United States Attorney

John B. Hughes
Assistant U. S. Attorney
Chief, Civil Division

David X. Sullivan
Assistant United States Attorney
P.O. Box 1824
New Haven, CT 06508

Attorneys for Plaintiff United States of America


/s/ Douglas S. Skalka
Attorney

KC-1252807-1                                             16