## STIPULATION OF OFFENSE CONDUCT

The defendant Martin R. Frankel and the Government stipulate and agree to the following offense conduct that gives rise to the defendant's agreement to plead guilty to Counts 1-20 and 45 to 48 of the superseding indictment in this case:

In approximately September 1989, Frankel organized and began operating a series of investment funds known as Creative Partners. At the time, Frankel was under investigation by the Securities and Exchange Commission for his alleged involvement in the misappropriation of client funds invested in another fraud. Frankel had several people working for or with him, including Sonia Howe, generating investor interest in the Creative Partners Funds. From approximately 1989 through approximately 1991, Frankel, Howe and others caused scores of investors to be solicited and to invest several million dollars in one or more Creative Partners investment funds. Unbeknownst to the investors, after their funds were received, they were deposited into Creative Partners Funds accounts and other accounts and then used by Frankel, Howe and others to pay their personal expenses, including expenses incurred in Howe's child custody dispute and divorce proceedings. To conceal the theft of the Creative Partners investment monies, Frankel and Howe created and sent to the investors false and fictitious account statements which reflected that the funds were successfully invested and earning significant returns. As a result of these and other false statements and material omissions, by 1991 the investors in the Creative Partners Funds believed that through investment the Funds had grown to a total of over $11 million. In fact, Frankel and Howe had approximately $6.0 million left of the originally invested funds and had diverted a majority of those funds to a Swiss bank account.

In order to forestall or completely avoid detection of the theft, Frankel and Howe determined to locate an alternative source of funds. Beginning in 1990, Frankel began the process of looking for a bank that he could purchase. Their plan was to use the Creative Partner investment monies to purchase the bank. His search included banks located in the southeastern United States.

In this regard, Frankel contacted a lawyer in Tennessee, through whom he met John Hackney. On Frankel's behalf, Hackney made several attempts to locate appropriate financial institutions for acquisition. During the course of these efforts, Frankel made clear to Hackney and others that Frankel's involvement in the investment would remain anonymous. Indeed, Hackney and John Jordan, a Tennessee attorney, agreed to and did serve as the would-be nominee purchasers for one such institution identified for acquisition. In this manner, Frankel's name would not be associated with the acquisition of a financial institution despite the fact that he would be providing the funds for the acquisition and would be overseeing the running of the acquired institution. Despite the identification of several possible financial institutions, and negotiations for the purchase of at least one, no such purchase was accomplished.

In approximately the summer of 1991, Frankel began investigating the purchase of insurance companies as an alternative to purchasing a banking institution. Shortly into the process, Hackney identified Franklin American Corporation, a publically traded corporation which wholly owned

9

EXHIBIT 1

Franklin American Life Insurance Company (FALIC), as available for acquisition. Frankel decided to acquire FAC and its subsidiary FALIC.

Again, Frankel insisted that his involvement in this acquisition would remain anonymous. Therefore, Frankel with the assistance of Howe, Hackney, Gary Atnip and Jordan, established a Tennessee trust, the sole Trustee of which would be Hackney. The Trust was named "The Thunor Trust." In order to form the Thunor Trust, Frankel provided the names of three individuals who were listed as "grantors" of the trust: Ed Krauss, Sonia Howe and Mark Shuki. The records for the Trust, prepared and executed by Frankel, Howe, Hackney, Jordan and others, falsely identified Shuki, Krauss and Howe as those who provided the funds for the formation of the trust and the purchase of FAC. These individuals were in fact nominee grantors for Frankel and the funds used to fund the trust and purchase FAC came from the Creative Partners investment monies.

In connection with the formation of the Thunor Trust and the acquisition of FAC, Frankel arranged for the creation of false and fictitious records which were filed with the Tennessee Department of Insurance and Commerce, the Securities and Exchange Commission and other state and federal regulatory agencies. Specifically, on September 18, 1991, Hackney, acting on behalf of Frankel as the "sole and irrevocable trustee" of the Thunor Trust, signed a false Form A under oath and filed that false document with the Commissioner of the Tennessee Department of Commerce and Insurance. The Form A was required to change control of FAC from its current shareholders to the Thunor Trust. In the Form A, Hackney falsely asserted to the commissioner that a diligent review had taken place, the results of which established that the money to be invested belonged to the grantors and no one else, and that Hackney would be the control person for Thunor Trust, which would hold the controlling interest in FAC and FALIC. These assertions were false. These records concealed Frankel's role in the formation of the Thunor Trust, his actual control, and his funding of the Trust with money misappropriated from the Creative Partners clients. Based in part upon these false representations, the purchase of FAC by the Thunor Trust was approved and Frankel accomplished the initial goal of gaining anonymous control of an entity with large cash reserves.

After the acquisition of FAC, from September 1991 through April 1999, while acting in concert with others, Frankel caused fraudulent quarterly and annual financial statements and other state regulatory filings pertaining to FALIC to be transmitted across county lines from corporate offices in Franklin, Tennessee, to the Tennessee Department of Commerce and Insurance in Nashville, Tennessee, which has regulatory control over the operation of insurance companies domesticated or domiciled in the state. These regulatory filings contained false representations regarding the identification, ownership, valuation and existence of company assets affecting the financial solvency of FALIC and concealed Frankel's affiliation with FALIC.

Following the acquisition of FAC, John Hackney assumed the position of President and CEO of FAC and FALIC. Gary Atnip, a certified accountant, assumed the position of CFO of FAC and FALIC. John Jordan became counsel to both companies. Hackney, Atnip and Jordan would maintain Frankel's anonymity through May 1999. Frankel paid each for his loyalty and his respective role in protecting Frankel's identity as well as Frankel's control of FAC.

Prior to the acquisition of FAC, Frankel had also purchased, anonymously, a brokerage firm called Liberty National Securities, Inc. Initially, in order to conceal his ownership and control of the brokerage firm, Frankel paid a certain individual to be the figurehead President of LNS, Inc. and to keep the company registered and in good standing with the SEC and the National Association of Securities Dealers (NASD). In approximately 1993, Frankel arranged for Robert Guyer to take over the role of figurehead "President" of LNS, Inc. Frankel's anonymous ownership, control and operation of LNS allowed him to conceal his activities (and the criminal enterprise he operated) from federal and state regulators and law enforcement. Indeed, it enabled him to evade the permanent bar from trading securities or from having any association with brokers and dealers imposed in 1992 by a federal court and the SEC. Throughout the scheme, Guyer, at Frankel's direction, made numerous false submissions to state and federal regulatory agencies, which, among other things, concealed Frankel's ownership and control of LNS, Inc.

Upon the acquisition of FALIC, Frankel directed that the reserve assets of FALIC (approximately $18,000,000) be liquidated and transferred to accounts at LNS, Inc. which he controlled. Frankel accomplished this transfer by ordering two wire transfers — $17,900,000 on or about November 15, 1991 and $260,000 on or about November 19, 1991. Frankel told FAC and FALIC that the funds would be invested in U.S. government and other similarly safe securities. Hackney, Atnip and Jordan understood that Frankel controlled the accounts at LNS, Inc. using the alias Eric Stevens and maintained Frankel's anonymity in this regard as well. Similarly, on April 21, 1992, the liquid assets of FAC were transferred to accounts under the control of LNS.

Following his receipt of this money into accounts under his control, Frankel transferred the monies to other accounts within and outside the United States. Ultimately, Frankel and Howe used approximately $11.0 million of the assets of FAC and FALIC to pay off the Creative Partners investors. They did so by moving these funds through a Swiss bank account under their control and back into various US bank accounts. They refunded the Creative Partners Fund investors from these US accounts. The remaining monies were used by Frankel to fund his own personal expenses and those of others, as well as to fund additional acquisitions.

In 1993, Frankel and Howe moved their operation from Ohio to Greenwich, Connecticut where Frankel leased and eventually purchased a large home at 889 Lake Avenue, Greenwich, Connecticut. He converted the home into an office set-up, with advanced computer networks, security systems, satellite access to market data, over 100 computer terminals, four network servers, cypherlock filing cabinets; numerous telephone lines and other state of the art equipment. Frankel and others hired security guards, a domestic staff, office workers, IT staff and others to ensure a smooth and secure operation. Frankel and others leased (and eventually purchased) the home under the name of a shell entity "Sundew International, Inc." Frankel and others established mailbox drops for various business entities in Greenwich and in neighboring Westchester County and arranged for telephone lines to be forwarded from other locations. Frankel used various aliases including Eric Stevens, David Rosse, and Mike King.

Following the initial acquisition of FALIC, Frankel, assisted by Hackney, Jordan and Atnip

11

identified additional insurance companies which could be acquired, thereby giving Frankel access to additional cash reserves. Each insurance company acquired was purchased with funds provided by Frankel, which had been previously stolen from other insurance companies. With each acquisition, Frankel's anonymous control of FAC and LNS, Inc. remained intact and the three grantors of the Thunor Trust were portrayed to various Insurance Departments and regulatory agencies as the individuals providing the funding for the purchase. Indeed, the scheme was set up in such a way so that with respect to each acquisition, Hackney was represented to be the controlling principal of the Trust as the sole Trustee. As with the acquisition of FALIC, after each acquisition, the cash reserves of each acquired company were liquidated and sent to accounts under Frankel's control at LNS, Inc., for, as Frankel had indicated, investment in U.S. government and other securities.

The acquisitions engineered, approved and funded by Frankel were as follows:

In February 1994, FAC acquired Family Guaranty Life Insurance Company ("FGLIC"), a provider of insurance services domiciled in the State of Mississippi. On or about March 15, 1994, Frankel and his associates arranged for the FGLIC assets, including reserves, to be transferred to accounts under the control of LNS and Frankel. From May 1998 through April 1999, while acting in concert with others, Frankel caused fraudulent quarterly and annual financial statements and other state regulatory filings pertaining to FGLIC to be transmitted across county and state jurisdictional lines from corporate offices in Franklin, Tennessee, to the Mississippi Department of Insurance in Jackson, Mississippi, who has regulatory control over the operation of insurance companies domesticated or domiciled in the state. These regulatory filings contained false representations regarding the identification, ownership, valuation and existence of company assets affecting the financial solvency of FGLIC and concealed Frankel's affiliation with FGLIC.

In March 1994, FALIC acquired control of Farmers and Ranchers Life Insurance Company ("F&RLIC"), an Oklahoma insurance provider. On or about April 8, 1994, Frankel and his associates arranged for the F&RLIC reserves to be transferred to accounts under the control of LNS and Frankel. Subsequently, F&RLIC was acquired by International Financial Corporation ("IFC") in or around October 1994. IFC was a wholly owned entity of the Thunor Trust, incorporated in the State of Oklahoma with its principal place of business in Tennessee. IFC, like FAC, was a holding company for insurance providers.

In August 1994, FAC acquired International Financial Services Life Insurance Company ("IFSLIC"), an insurance provider domiciled in the State of Missouri. On or about October 5, 1994, Frankel and his associates arranged for the IFSLIC reserves to be transferred to accounts under the control of LNS and Frankel. IFSLIC was subsequently acquired by IFC. On or about November 9, 1994, Frankel and his associates arranged for the assets of IFSLIC and IFC to be transferred to accounts under the control of LNS.

In March 1995, FAC acquired Franklin Protective Life Insurance Company ("FPLIC"), a provider of insurance services domiciled in the State of Mississippi. On or about March 21, 1995,

Frankel and his associates arranged for the FPLIC reserves to be transferred to accounts under the control of LNS and Frankel. From May 1998 through April 1999, while acting in concert with others, Frankel caused fraudulent quarterly and annual financial statements and other state regulatory filings pertaining to FPLIC to be transmitted across county and state jurisdictional lines from corporate offices in Franklin, Tennessee, to the Mississippi Department of Insurance in Jackson, Mississippi, which has regulatory control over the operation of insurance companies domesticated or domiciled in the state. These regulatory filings contained false representations regarding the identification, ownership, valuation and existence of company assets affecting the financial solvency of FPLIC and concealed Frankel's affiliation with FPLIC.

In December 1997, IFC acquired First National Life Insurance Company of America ("FNLIC"), an insurance provider domiciled in the State of Mississippi. On or about March 1, 1998, Frankel and his associates arranged for the FNLIC assets to be transferred to accounts under the control of LNS and Frankel. From September 1998 through April 1999, while acting in concert with others, Frankel caused fraudulent quarterly and annual financial statements and other state regulatory filings pertaining to FNLIC to be transmitted across county and state jurisdictional lines from corporate offices in Franklin, Tennessee, to the Mississippi Department of Insurance in Jackson, Mississippi, which has regulatory control over the operation of insurance companies domesticated or domiciled in the state. These regulatory filings contained false representations regarding the identification, ownership, valuation and existence of company assets affecting the financial solvency of FNLIC and concealed Frankel's affiliation with FNLIC.

In March of 1997, FAC acquired Kennedy National Life Insurance Company (KNLIC), an insurance provider domiciled in Indiana. On or about March 31, 1997, Frankel and his associates arranged for the KNLIC assets to be transferred to accounts under the control of LNS and Frankel.

In April 1999, FALIC acquired Old South West Life Insurance Company ("OSWLIC"), an insurance provider domiciled in the State of Arkansas. On or about April 6, 1999, Frankel and his associates arranged for the OSWLIC assets to be transferred to accounts under the control of LNS and Frankel.

From time to time, Frankel and others also caused the Thunor Trust and the insurance providers owned by the Thunor Trust to enter into re-insurance and other agreements. These agreements resulted in an increase in the cash reserves available to the Thunor Trust insurance companies and thus under the control of Frankel operating under the name Eric Stevens as LNS, Inc.

For example, on approximately October 30, 1998, FNLIC entered into a re-insurance agreement with Peoples Benefit Life Insurance Company ("Peoples") and Veterans Life Insurance Company ("Veterans"). In connection with this agreement, from between November 6, 1998, and February 25, 1999, Peoples and Veterans transferred approximately $15,000,000 to FNLIC, which funds represented the cash reserves associated with the policies covered by the re-insurance agreement. Thereafter, Frankel and his associates arranged for these funds be transferred to Frankel

13

at LNS, Inc. .

Similarly, on approximately April 1, 1999, FNLIC entered into a re-insurance agreement with Settlers Life Insurance Company of Virginia ("Settlers") for the assumption and reinsurance of numerous Settlers life insurance policies. In connection with this agreement, the asset reserves maintained in connection with those policies, approximately $44 million, were transferred by Settlers to FNLIC. Thereafter, Frankel and his associates arranged for these reserves to be transferred accounts under the control of LNS and Frankel.

By way of further example, Frankel and his associates arranged for the following wire transfers, each representing the transfer of insurance company assets either directly to or on their way to accounts controlled by Frankel at LNS, Inc.

| Amount of Wire Transfer | Originating Account | Receiving Account | Date |
|---|---|---|---|
| $4,300,000 | FALIC Acct. No. 100014-349-0 at FANB | Dreyfus NY Acct. No. 719 0791361199 | 11/8/94 |
| $ 350,000 | FALIC Acct. No. 100014-349-0 at FANB | Dreyfus NY Acct. No. 264 0791367121 | 8/12/96 |
| $ 500,000 | FALIC Acct. No. 100014-349-0 at FANB | Dreyfus NY Acct. No. 264 0791367121 | 8/5/97 |
| $ 600,000 | FGLIC Acct. No. 10008 58235 at FANB | Dreyfus NY Acct. No. 264 0791367121 | 10/19/95 |
| $ 550,000 | FGLIC Acct. No. 10008 58235 at FANB | Dreyfus NY Acct. No. 264 0791367121 | 6/25/96 |